1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLARD DOWNEY, | ) | 1:09-cv-0812 SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **BACKGROUND**

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.  42 U.S.C. § 405(g).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

_____

        [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 9, 12.)  On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1956, has a ninth-grade education, and previously worked as a roofer. (Administrative Record ("AR") 23, 25, 26.)  Plaintiff stopped working because of an "aortic mechanic valve replacement." (AR 26.)

On October 11, 2005, William Holmes, M.D., an orthopedic surgeon, reported that Plaintiff complained of right shoulder pain exacerbated by overhead lifting and repetitive reaching and grasping.  Plaintiff took occasional Vicodin for discomfort.  (AR 183.)  On January 19, 2006, Plaintiff reported to Dr. Holmes that his shoulders bothered him with overhead lifting, reaching, and pulling.  (AR 177.)

On March 13, 2006, Plaintiff filed an application for DIB, alleging disability beginning March 10, 2006, due to heart valve replacement and shoulder pain.  (AR 9, 11, 97.)

On June 1, 2006, D.D. Sharbaugh, a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC").  (AR 149-56.)  The consultant opined that Plaintiff could (1) occasionally lift and/or carry up to 50 pounds and frequently up to 25 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling with the upper extremities.  (AR 150.)  Plaintiff was "limited to bilateral frequent overhead work."  (AR 152.)  Plaintiff had no postural, visual, communicative, or environmental limitations.  (AR 151-53.)

On July 2, 2006, Dr. Holmes completed a questionnaire indicating that Plaintiff had an unlimited ability to sit, stand, and walk.  (AR 198.)  Plaintiff could lift "20 to 30 pounds frequently" and "15 pounds occasionally" during the workday.  (AR 199.)  Plaintiff could occasionally reach, handle, feel, push, pull, and grasp.  (AR 199.)

On July 11, 2006, Robert Master, M.D., a cardiologist, completed a questionnaire indicating that Plaintiff should not work on a roof.  (AR 163.)  Dr. Master opined that Plaintiff could sit, stand, and walk for eight hours in an eight-hour workday, and he did not need to lie down or elevate his legs (AR 163), and could reach, handle, feel, push, pull, and grasp for eight hours a day (AR 164).

1    The Commissioner denied Plaintiff's application initially and again on reconsideration;

2    consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 47-

3    52, 61-65.) On January 15, 2008, ALJ Sandra Rogers held a hearing where Plaintiff testified that

4    he could only sit for 20 minutes, stand for 10 minutes, and lift up to ten pounds. (AR 32.)

5    The Social Security Administration has taken administrative notice of the Dictionary of

6    Occupational Titles (the "DOT"), which is published by the Department of Labor and gives detailed

7    physical requirements for a variety of jobs. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir.

8    2007); *see also* 20 C.F.R. § 404.1566(d)(1). A vocational expert ("VE") testified that, according to

9    the DOT, Plaintiff's past work as a roofer was medium[2] with no transferable skills to light or

10   sedentary jobs. (AR 38.) A hypothetical person of the same age, education, and work experience

11   as Plaintiff could not perform Plaintiff's past relevant work if that person could at most lift 20 to 30

12   pounds occasionally and 15 pounds frequently, and could occasionally reach, handle, feel, push, pull,

13   and grasp. (AR 39.) Such a person, however, could perform the light, unskilled jobs of parking lot

14   attendant and sales attendant. (AR 40-41.)

15   The VE further testified that 15,200 unskilled parking lot and sales attendant jobs

16   accommodated the occasional use of the upper extremities. The VE further explained that he had

17   eroded the total available jobs by 50% to account for Plaintiff's non-exertional limitations that

18   prevented Plaintiff from using his hands more than occasionally. The VE testified that the reduced

19   number of parking lot and sales attendant jobs accommodated "limited arm usage" in that the jobs

20   "fit the hypothetical of light work with only occasional hand and arm usage." (AR 40, 41.) The ALJ

21   did not, however, ask the VE the basis for his testimony or whether his testimony was consistent

22   with the DOT.

23   On June 11, 2008, the ALJ issued a decision, finding Plaintiff not disabled since March 10,

24   2006. (AR 6-19.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial

---

26   [2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects

27   weighing up to 25 pounds. If someone can do medium work, [the Commissioner determines] that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

28                                                    3

gainful activity since the alleged onset date of March 10, 2006; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform his past relevant work; and (5) could perform other work in the national economy. (AR 11-18.) Plaintiff sought review of this decision before the Appeals Council. On March 6, 2009, the Appeals Council denied review. (AR 1-3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On May 5, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff argues that the ALJ erred in relying on the VE's testimony that conflicted with the DOT and in failing to comply with Social Security Rulings ("SSRs") 83-12 and 83-14.[3]

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N.Y. v. NLRB*, 305

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

1   U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the

2   evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

3   not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

4   504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

5   **APPLICABLE LAW**

6   An individual is considered disabled for purposes of disability benefits if he is unable to

7   engage in any substantial, gainful activity by reason of any medically determinable physical or

8   mental impairment that can be expected to result in death or that has lasted, or can be expected to

9   last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),

10  1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or

11  impairments must result from anatomical, physiological, or psychological abnormalities that are

12  demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

13  such severity that the claimant is not only unable to do his previous work, but cannot, considering

14  his age, education, and work experience, engage in any other kind of substantial, gainful work that

15  exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

16  The regulations provide that the ALJ must undertake a specific five-step sequential analysis

17  in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the

18  claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

19  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

20  or a combination of impairments significantly limiting her from performing basic work activities.

21  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the

22  claimant has a severe impairment or combination of impairments that meets or equals the

23  requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.*

24  §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant

25  has sufficient RFC despite the impairment or various limitations to perform her past work.  *Id.*

26

27

28                                    5

1  §§ 404.1520(f), 416.920(f).[4]  If not, in Step Five, the burden shifts to the Commissioner to show that

2  the claimant can perform other work that exists in significant numbers in the national economy.  *Id.*

3  §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the

4  sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99

5  (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

6  **DISCUSSION**

7  **A.     The ALJ Improperly Relied on the Testimony of the Vocational Expert**

8          Plaintiff contends that the ALJ erred in failing to inquire whether the VE's testimony

9  conflicted with the DOT.  Plaintiff further asserts that the VE's testimony did, in fact, conflict with

10  the DOT and that the conflict was not sufficiently addressed by the ALJ or the VE.  Defendant

11  maintains, on the other hand, that the VE explained the conflict and that the ALJ's error in failing

12  to ask the VE about any conflict between the VE's testimony and the DOT was harmless.

13          As noted above, a VE testified that Plaintiff's past relevant work as a roofer was medium with

14  no transferable skills to light or sedentary jobs.  (AR 38.)  The ALJ found Plaintiff to have the RFC

15  to perform light work except that Plaintiff could only occasionally reach, handle, feel, push, pull, and

16  grasp.  (AR 12.)  Plaintiff could not work on a roof.  (AR 12.)  The VE testified that a hypothetical

17  person of the same age, education, and work experience as Plaintiff could not perform Plaintiff's past

18  relevant work if that person could at most lift 20 to 30 pounds occasionally and 15 pounds

19  frequently, and could occasionally reach, handle, feel, push, pull, and grasp.  (AR 39.)  Such a

20  person, however, could perform the light, unskilled jobs of parking lot attendant and sales attendant.

21  (AR 40-41.)

22

23  ─────────────

24  [4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.

25  SSR 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.*  "In determining a claimant's RFC, an ALJ must

26  consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec.*

27  *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

28  6

1    The VE further testified that, in light of Plaintiff's limitation of occasional hand usage, the

2    availability of these parking lot and sales attendant jobs would be eroded, or reduced, by 50% to a

3    total of 4,200 parking lot attendant jobs and 11,000 sales attendant jobs.  (AR 40-41.)  As noted

4    above, the ALJ did not ask the VE whether his testimony was consistent with the DOT.

5    The Social Security Administration relies "primarily on the DOT . . . .  Occupational

6    evidence provided by a VE . . . generally should be consistent with the occupational information

7    supplied by the DOT."  SSR 00-4p, 2000 WL 1898704, at *2.  "Neither the DOT nor the

8    VE . . . evidence automatically 'trumps' when there is a conflict."  *Id.*  "When a VE . . . provides

9    evidence about the requirements of a job or occupation, the adjudicator has an affirmative

10    responsibility to ask about any possible conflict between that VE . . . evidence and information

11    provided in the DOT."  *Id.* at *4.  In such situations, the adjudicator "will [a]sk the VE . . . if the

12    evidence he or she has provided conflicts with information provided in the DOT."  *Id.*  "If the

13    VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable

14    explanation for the apparent conflict."  *Id.*  In view of the requirements of SSR 00-4p, an ALJ may

15    not rely on a VE's testimony about the requirements of a particular job without first inquiring

16    whether the testimony conflicts with the DOT and whether there is a reasonable explanation for any

17    deviation.  *Massachi*, 486 F.3d at 1152-53.  The failure to do so may be harmless where there is no

18    conflict or where the VE provides sufficient support justifying any deviations.  *See id.* at 1154 n.19.

19    According to the DOT, the jobs of parking lot attendant and sales attendant require frequent

20    reaching and handling.  *See* 1991 WL 687865; 1991 WL 672643.  Because the ALJ found that

21    Plaintiff could reach and handle only occasionally, Plaintiff could not perform these jobs as

22    identified in the DOT.  In this case, the VE testified that, in view of Plaintiff's limitation of

23    occasional hand usage, the number of parking lot and sales attendant jobs would be eroded by about

24    half, i.e., that there were 4,200 parking lot attendant jobs and 11,000 sales attendant jobs that

25    Plaintiff could perform.  (AR 39-41.)  The ALJ, however, did not ask the VE the basis for this

26    testimony or whether the testimony conflicted with the DOT.  Nonetheless, the ALJ ultimately

27

28                                                    7

1   adopted the VE's testimony in her decision which stated: "Pursuant to SSR 00-4p, the vocational

2   expert's testimony is consistent with the information contained in the Dictionary of Occupational

3   Titles." (AR 18.)

4           In response, Defendant concedes that the ALJ erroneously found that the VE's testimony was

5   consistent with the DOT.  (Def.'s Resp. Br. at 4 n.3.)  Defendant maintains, however, that the error

6   did not impact the ALJ's analysis.  Moreover, Defendant contends that the ALJ's failure to inquire

7   pursuant to SSR 00-4p whether the VE's testimony was consistent with the DOT was harmless.

8   According to Defendant, the VE fully explained the deviation from the DOT by (1) identifying the

9   specific DOT code numbers and job titles contained in the DOT, (2) eroding the total available jobs

10  by 50% to account for Plaintiff's limited, occasional use of his hands, and (3) explaining that the

11  reduced number of jobs "fit the hypothetical of light work with only occasional hand and arm usage."

12  (AR 41.)  Therefore, the ALJ's error was harmless because it "was inconsequential to the ultimately

13  nondisability determination."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir.

14  2006).

15          Without adequate supporting evidence, however, Defendant's claim that the omission was

16  inconsequential is insufficient to merit a harmless error determination.  *See Robbins*, 466 F.3d at

17  885; *cf. Stout*, 454 F.3d at 1055 ("We have . . . found harmless errors that occurred during a

18  procedure or step the ALJ was not required to perform.").  Rather, when the ALJ fails to ask the VE

19  whether his testimony conflicts with the DOT, such a procedural error is harmless if either there is

20  no conflict or the VE had provided sufficient support for his conclusion so as to justify any potential

21  conflicts.  *Massachi*, 486 F.3d at 1154 n.19.

22          In this case, the VE did not provide a reasonable explanation for deviating from the DOT.

23  Reasonable explanations include that the DOT does not provide information about all occupations,

24  information about a particular job not listed in the DOT may be available elsewhere, and the general

25  descriptions in the DOT may not apply to specific situations.  *Id.* at 1153 n.17 (*citing* SSR 00-4p).

26  The VE's testimony in this case that Plaintiff's occasional use of his hands would reduce the available

27

28                                                          8

number of parking lot and sales attendant jobs by half provides no basis for his deviation from the DOT, such as the VE's experience in placing people with limitations similar to those of Plaintiff. Therefore, the ALJ's error in failing to inquire whether the VE's testimony conflicted with the DOT was not harmless.

The ALJ further erred by not explaining in her written decision how the apparent conflict between the VE's testimony and the DOT was resolved.  Instead, the ALJ noted the VE's testimony that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the jobs of parking lot attendant and sales attendant that were available in the economy "after 50% erosion for non-exertional limitations." (AR 18.)  The ALJ found that, based on the VE's testimony, Plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (AR 18.)

SSR 00-4p provides:

> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled.  The adjudicator will explain in the determination or decision how he or she resolved the conflict.  The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704, at *4.  While *Massachi* does not expressly address SSR 00-4p's requirement that the ALJ explain any conflicts in her written decision, the Ninth Circuit stated that "[t]he procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT]."  *Massachi*, 486 F.3d at 1153.   Where the ALJ does not follow the procedural requirements of SSR 00-4p, this Court cannot determine whether substantial evidence supports the ALJ's step-five findings.  *See id.* at 1153-54.

In sum, the Court finds that substantial evidence does not support the ALJ's determination that, although Plaintiff could not perform his past relevant work, he could perform other work in the national economy.  The Court, therefore, remands this case for further proceedings.  Accordingly,

1   the Court need not address Plaintiff's remaining argument that the ALJ failed to comply with SSRs

2   83-12 and 83-14.  *See Angel v. Barnhart*, 329 F.3d 1208, 1210 n.4 (10th Cir. 2003) ("Given the

3   nature of our remand [for further proceedings before the ALJ], we do not address [the claimant's]

4   claim that she does not have the residual functional capacity to perform her past relevant

5   work . . . ."); *Byington v. Chater*, 76 F.3d 246, 250-51 (9th Cir. 1996) ("Because we find that the

6   district court committed error and the decision of the ALJ is supported by substantial evidence, we

7   do not consider the Secretary's other arguments on appeal.").

8   **B.      Remand is Required**

9          "The court shall have power to enter, upon the pleadings and transcript of the record, a

10  judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

11  with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  In Social Security cases,

12  the decision to remand to the Commissioner for further proceedings or simply to award benefits is

13  within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If

14  additional proceedings can remedy defects in the original administrative proceedings, a social

15  security case should be remanded.  Where, however, a rehearing would simply delay receipt of

16  benefits, reversal [and an award of benefits] is appropriate."  *Id.* (alteration in original) (internal

17  quotation marks omitted); *see also Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399

18  (9th Cir. 1988) ("Generally, we direct the award of benefits in cases where no useful purpose would

19  be served by further administrative proceedings, or where the record has been thoroughly

20  developed." (citation omitted)).

21         The Court has determined that the ALJ erred in finding that Plaintiff could perform work in

22  the national economy.  The Court finds that this error can be corrected with further proceedings and

23  remands this action for further analysis at step five.  On remand, the ALJ shall specifically inquire

24  as to whether the VE's testimony, as to the positions available given the hypothetical limitations,

25  deviates from the DOT and if so, whether there is any reasonable explanation for such deviation.

26

27

28                                                          10

1

## CONCLUSION

2    Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial

3   evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further

4   proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in

5   favor of Plaintiff Willard Downey and against Defendant Michael J. Astrue, Commissioner of Social

6   Security.

7

8

9   IT IS SO ORDERED.

10  **Dated:    August 30, 2010**                    **/s/ Sheila K. Oberto**
                                           UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      11