1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLARD DOWNEY, | ) | Case No.: 1:09-cv-00812-SKO |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING PLAINTIFF'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 2412** |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | (Docs. 23, 30) |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## I.   INTRODUCTION

On May 5, 2009, Plaintiff Willard Downey ("Plaintiff") filed a complaint seeking to reverse the Administrative Law Judge's ("ALJ") decision denying Plaintiff's claim for Social Security benefits.  On August 31, 2010, the Court issued an order reversing the ALJ's decision, remanding the case, and directing that judgment be issued in favor of Plaintiff.  (Docs. 21, 22.)  Specifically, the Court determined that the Vocational Expert's ("VE") testimony upon which the ALJ relied conflicted with the Dictionary of Occupational Titles ("DOT"), and the ALJ failed to question the VE regarding the conflict or seek from the VE a reasonable explanation for deviating from the DOT.

(Doc. 21, 3:15-9:23.)  As a result, the Court determined that there was not substantial evidence in the record on which the ALJ could rely to support the non-disability finding.

On November 15, 2010, as the prevailing party, Plaintiff filed an application pursuant to the Equal Access to Justice Act ("EAJA") seeking $7,719.32 in attorneys' fees.  (Doc. 23.)  Plaintiff's EAJA application was opposed by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant").  (Doc. 24.)  Plaintiff filed a reply brief on December 20, 2010. (Doc. 25.)

On May 16, 2011, the Court issued an order requiring the parties to submit additional briefing regarding whether Plaintiff may recover attorneys' fees for work performed by Mr. Ralph Wilborn, who is not a member of either the California Bar or the Bar of this Court.  (Doc. 26.)  The parties each filed a supplemental brief addressing this issue.  (Docs. 27, 28.)  On November 22, 2011, the court ordered that any supplemental request for EAJA fees be submitted within 20 days of the Court's order.  (Doc. 29.)  On November 28, 2011, Plaintiff filed a supplemental request for EAJA fees seeking an additional $2,670.77 as compensation for work performed by Mr. Wilborn in defending Plaintiff's original EAJA application. (Doc. 30.)  The Commissioner filed an opposition to Plaintiff's supplemental application on December 15, 2011.[1]  (Doc. 32.)  For the reasons set forth below, the Court GRANTS Plaintiff's original and supplemental applications for an award of attorneys' fees pursuant to the EAJA in the amount of $7,777.02.

## II.  DISCUSSION

### A.   Plaintiff Meets the Requirements for an Award of EAJA Fees

The EAJA provides that "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified."  28 U.S.C. § 2412(d)(1)(A); *see also Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002).  "Fees and other expenses" include "reasonable attorney fees." 28 U.S.C. § 2412(d)(2)(A).  The prevailing party must

---

[1] Due to the need for additional briefing relating to Plaintiff's request for time expended by Mr. Wilborn, as well as the filing of a supplemental request for EAJA fees, Plaintiff's EAJA fee application and supplemental application were not completely briefed until December 15, 2011.

apply for attorneys' fees within thirty days of the final judgment in the action. *Id*. § 2412(d)(1)(B). Further, the party applying for an award of EAJA fees must have an individual net worth not greater than $2,000,000 at the time the civil action was filed. *Id.* § 2412(d)(2)(B).

A remand pursuant to sentence four of 42 U.S.C. § 405(g) has been found to constitute a final, appealable judgment. *Shalala v. Schaefer*, 509 U.S. 292, 296-302 (1993). A party who obtains a sentence-four remand in a social security appeal is a prevailing party for purposes of the EAJA. *Schaefer*, 509 U.S. at 302. Here, Plaintiff asserts that he was a prevailing party for purposes of the appeal in this case because he obtained a sentence-four remand, and Plaintiff argues that the Commissioner was not substantially justified in its underlying action or in its subsequent litigation position. Plaintiff further asserts that his net worth as an individual was not more than $2,000,000 at the time the civil action was filed pursuant to 28 U.S.C. § 2412(d)(1)(D)(2)(B). As it relates to Plaintiff's eligibility for an EAJA award, the parties dispute only whether the Commissioner's litigation position was substantially justified.

## 1.    Legal Standard – Substantial Justification

Pursuant to 28 U.S.C. § 2412(d)(1)(A), claimants who successfully challenge an agency decision in a civil action are entitled to reasonable fees and other expenses:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

To be "substantially justified," the position taken must have a reasonable basis in law and fact. *Pierce v. Underwood*, 487 U.S. 552, 556-66 (1988); *United States v. Marolf*, 277 F.3d 1156, 1160 (9th Cir. 2002). Substantial justification is interpreted as being "justified to a degree that could satisfy a reasonable person" and "more than merely undeserving of sanctions for frivolousness." *Underwood*, 487 U.S. at 565; *see also Marolf*, 277 F.3d at 1161. The fact that a court reverses and remands a case for further proceedings "does not raise a presumption that [the government's] position was not substantially justified." *Kali v. Bowen*, 854 F.2d 329, 335 (9th Cir. 1988). In considering whether the government's position is "substantially justified," courts consider not only the position

of the United States taken in a civil action, but also the action or failure to act by the agency upon which the civil action is based. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259-60 (9th Cir. 2001); 28 U.S.C § 2412(d)(2)(D). Thus, courts "must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court." *Kali*, 854 F.2d at 33. However, "[w]here . . . the ALJ's decision was reversed on the basis of procedural errors, the question is *not* whether the government's position as to the merits [of the plaintiff's disability claim] was substantially justified . . . [but] whether the government's decision to defend on appeal the procedural errors committed by the ALJ was substantially justified." *Shafer v. Astrue*, 518 F.3d 1067, 1071 (9th Cir. 2008).

In considering the issue of substantial justification in *Le v. Astrue*, the Ninth Circuit held that the government's position that a doctor whom the claimant had visited five times over three years was not a treating doctor, while incorrect, was substantially justified since a nonfrivolous argument could be made that the five visits over three years were not enough under the regulatory standard, especially given the severity and complexity of the claimant's alleged mental problems. 529 F.3d 1200, 1201-02 (9th Cir. 2008).

In *Lewis v. Barnhart*, the court determined that the government's defense of an ALJ's erroneous characterization of the claimant's testimony was substantially justified. 281 F.3d 1081 (9th Cir. 2002). In that case, the ALJ had reviewed the claimant's testimony about her past work at a gas station and resolved ambiguities in her testimony against her. *Id.* at 1084. Although the district court disagreed with the conclusion reached by the ALJ and remanded the matter, on appeal of the claimant's fee request that was denied by the district court, the appellate court determined that the ALJ had a reasonable basis in fact for the underlying decision because there were facts that cast doubt on the claimant's subjective testimony about her past work. *Id.* at 1084. Further, the defendant's position to defend the ALJ's error had a reasonable basis in law because an ALJ must assess a claimant's testimony and may use that testimony to define past relevant work as actually performed. *Id.* The Ninth Circuit, therefore, affirmed the district court's determination that Defendant's position was substantially justified. *Id.* at 1086.

In contrast, however, where the government violates its own regulations, fails to acknowledge settled circuit case law, or fails to adequately develop the record, its position will not be held to be substantially justified. *Gutierrez*, 274 F.3d at 1259-60. For example, in *Sampson v. Chater*, the ALJ's failure to make necessary inquiries of the unrepresented claimant and his mother to determine the onset date of disability, as well as the ALJ's disregard of substantial evidence establishing the onset date of disability, led the court to hold that the ALJ's actions, and the defendant's defense of those actions, were not substantially justified. 103 F.3d 918, 921-22 (9th Cir. 1996); s*ee also Flores v. Shalala*, 49 F.3d 562, 570-72 (9th Cir. 1995) (finding ALJ and Commissioner not substantially justified where ALJ ignored a medical report); *Crowe v. Astrue*, No. CIV S-07-2529 KJM, 2009 WL 3157438, at *1 (E.D. Cal. Sept. 28, 2009) (no substantial justification in law or fact based on improper rejection of treating physician opinions without providing a basis in the record for doing so); *Aguiniga v. Astrue*, No. CIV S-07-0324 EFB, 2009 WL 3824077, at *3 (E.D. Cal. Nov. 13, 2009) (no substantial justification where ALJ repeatedly mischaracterized the medical record, improperly relied on non-examining physician that contradicted clear weight of medical evidence, and improperly discredited claimant's subjective complaints as inconsistent with the medical record).

**2.      The Commissioner's Position Was Not Substantially Justified**

**a.      The Court's Underlying Decision on the Merits**

On March 13, 2006, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging disability beginning on March 10, 2006, due to heart-valve replacement and shoulder pain. (Administrative Record ("AR") 9, 11, 97.) On January 15, 2008, an ALJ held a hearing regarding Plaintiff's DIB application. (AR 20-44.) A Vocational Expert ("VE") testified at the hearing, and the ALJ posed a hypothetical to the VE for consideration. Specifically, the ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education, and work experience who was limited to lifting 20 to 30 pounds occasionally, 15 pounds frequently, and could only occasionally reach, handle, feel, push, pull, and grasp. (AR 39.) The VE testified that such a hypothetical person could not perform Plaintiff's past work, but such a person was able to perform the light, unskilled jobs of parking lot attendant and sales attendant. (AR 40-41.) The VE testified that 15,200 unskilled parking lot and sales attendant jobs accommodated Plaintiff's limitation for only occasional use of

the upper extremities.  The VE explained that he had eroded the total available jobs in these categories by 50 percent to account for Plaintiff's non-exertional limitations that prevented Plaintiff from using his hands more than occasionally.  The VE testified that the reduced number of parking lot and sales attendant jobs accommodated "limited arm usage" in that the jobs "fit the hypothetical of light work with only occasional hand and arm usage."  (AR 40, 41.)  The ALJ did not, however, ask the VE the basis for his testimony or whether his testimony was consistent with the DOT.

On June 11, 2008, the ALJ issued a decision, finding Plaintiff not disabled since March 10, 2006.  (AR 6-19.)  Plaintiff appealed that decision, arguing that the ALJ erred in relying on the VE's testimony that conflicted with the DOT and in failing to comply with Social Security Rulings ("SSRs") 83-12 and 83-14.

On August 31, 2010, the Court issued a decision reversing the ALJ's decision and remanding the case.  (Doc. 21.)  The Court explained that the ALJ found Plaintiff could only occasionally reach, handle, feel, push, pull, and grasp.  (AR 12; Doc. 21, 6:14-16.)  Nevertheless, the ALJ determined that Plaintiff could perform work in the national economy and was therefore not disabled.  The ALJ's determination was predicated on the VE's testimony that, despite Plaintiff's limitation for only occasional reaching and handling, 15,200 parking lot and sales attendant jobs could be performed by Plaintiff.   According to the DOT, however, the jobs in the categories of parking lot and sales attendant require "frequent" reaching and handling.  *See* DICOT 915.473-010, 1991 WL 687865; DICOT 299.677-010, 1991 WL 672643.  Because the ALJ determined that Plaintiff could reach and handle only occasionally, Plaintiff could not perform these jobs as described in the DOT.  The VE did not provide any basis for testifying that Plaintiff, despite his limited ability to use his hands, could nonetheless perform 15,200 jobs in the category of parking lot attendant and sales attendant, as all the jobs in these categories require frequent reaching and handling.

Although the Commissioner argued that any error by the ALJ was harmless because the VE fully explained the deviation for the DOT by discounting the total number of jobs available to Plaintiff in the categories of parking lot attendant and sales attendant by 50 percent, the Court concluded that the VE did not provide a reasonable explanation for the deviation from the DOT.  (Doc. 21, 8:22.)  The  Court also determined that the ALJ further erred by not explaining in her

written decision how the apparent conflict between the VE's testimony and the DOT was resolved. (Doc 21, 9:5-6.)  Instead, the ALJ noted the VE's testimony and concluded that based on the VE's testimony, Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (*See* Doc. 21, 9:6-11.)  The Court ultimately concluded that because the VE offered no explanation for the deviation from the DOT and the ALJ failed to consider the conflict between the DOT and the VE's testimony, it could not be determined whether substantial evidence supported the ALJ's Fifth-Step Finding.  (Doc. 21, 9:17-23.)

> **b.    Analysis**

The Commissioner asserts that he was substantially justified in arguing that the ALJ's error was harmless because the VE acknowledged Plaintiff's hand usage limitation and discounted the number of parking lot attendant and sales attendant jobs that Plaintiff could perform.  (Doc. 24, 3:2-4:28.)  The Commissioner's argument, however, is not persuasive.

The Social Security Administration has issued Social Security Ruling ("SSR") 00-4p, which provides a policy interpretation as to the agency's use of expert and vocational specialist evidence. Social Security Ruling 00-4p provides the following guidance, in relevant part:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between the VE or the VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.  The adjudicator must resolve the conflict by determining if the explanation given by the VE or the VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

Here, the VE's testimony that the job categories of parking lot and sales attendant were eroded by 50 percent due to Plaintiff's limitation to only occasional reaching and handling does not explain *why* a 50 percent reduction adequately accounts for Plaintiff's limitation.  The DOT provides that the jobs in the category of parking lot and sales attendant require *frequent* handling and reaching. Given Plaintiff's limitation to only occasionally handling and reaching, the VE's testimony was not consistent with the DOT's description of the requirements of parking lot and sales attendant jobs.

7

1    While the VE, as an expert, is entitled to provide testimony that differs from the DOT, the

2    ALJ is required to consider whether the VE may be credited over the DOT.  As stated in SSR 00-4p,

3    when there is such a conflict,"[n]either the DOT nor the VE or VS evidence automatically 'trumps.'"

4    SSR-00-4p, at *2.  Rather, it is up to the adjudicator to resolve the conflict by determining if the

5    explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS

6    testimony rather than the DOT information.  The ALJ cannot resolve the conflict if the VE provides

7    no basis as to why the VE's testimony conflicts with the DOT.  *See Massachi v. Astrue*, 486 F.3d

8    1149, 1154 n. 19 (9th Cir. 2007)

9    Here, as explained in the Court's underlying decision on this matter, the VE offered no

10   explanation why Plaintiff, limited to only occasional reaching and handling, could nonetheless

11   perform 50 percent of the parking lot  and sales attendant jobs the DOT defines as requiring *frequent*

12   reaching and handling.  Simply discounting the number of jobs in the parking lot and sales attendant

13   categories does not explain why 50 percent of those jobs require something less than frequent

14   reaching and handling.  The ALJ neither resolved the apparent conflict nor acknowledged it.

15   Moreover, even if the ALJ had somehow attempted to resolve the conflict, the VE provided no basis

16   for his testimony, and the ALJ had nothing whatsoever to rely upon in resolving the conflict.  The

17   Commissioner's argument that the VE explained the discrepancy by testifying that the reduced

18   number of parking lot and sales attendant job titles accommodated the identified "limited arm

19   usage," in that the jobs "fit the hypothetical of light work with only occasional hand and arm usage"

20   is without factual or legal merit.  The VE's statement in this regard is not an explanation; it is only

21   a conclusion.

22   In *Santos v. Astrue*, the court considered whether the Commissioner was substantially

23   justified in arguing that the ALJ's failure to specifically ask the VE whether her responses conflicted

24   with the DOT was harmless.  No. VS 07-178-PLA, 2008 WL 2571855, at *2 (C.D. Cal. June 26,

25   2008).  In that case, the Commissioner argued that he was substantially justified in asserting that the

26   jobs and numbers identified by the VE constituted the amount of such jobs available that would suit

27   Plaintiff's specific limitations, and excluded the jobs in those occupational titles that required

28   standing or walking more than two hours per day.  *Id.*  The Commissioner asserted that the ALJ's

failure to specifically ask the VE whether that testimony conflicted with the DOT was harmless error because the VE qualified her response by explaining the erosive effect of the sit/stand option on the available job base. *Id.* The court rejected this argument noting that, although the vocational expert reduced the number of jobs available in the local and national economy based on the sit/stand option, the VE did not provide sufficient support for her conclusion that the plaintiff could perform the jobs cited given the plaintiff's limitation to two hours of standing and walking in an eight-hour workday. *Id.* Further, the ALJ did not elicit any explanation from the VE to support such a conclusion. *Id.* The court reasoned that the ALJ had an affirmative duty to inquire about any possible conflicts between the VE's testimony and the DOT and to obtain a reasonable explanation for any deviation, but the ALJ failed to do so. The court concluded that the Commissioner's litigation position defending such basic and fundamental errors lacked substantial justification.

The factual situation in this case is very similar to that in *Santos*. Here, the ALJ's failure to inquire whether there was a conflict between the testimony offered by the VE and the job descriptions provided in the DOT, or to elicit a reasonable explanation from the VE for the apparent conflict, was error. *Massachi*, 486 F.3d at 1153. The error could be considered harmless only if (1) there was no apparent conflict between the VE's testimony and the DOT, or (2) if the VE offered an explanation for the conflict. *Massachi*, 486 F.3d at 1154 n.19. Because there was an apparent conflict between the VE's testimony and the DOT, but no explanation by the VE why the VE's testimony deviated from the DOT, there was no reasonable factual or legal basis for the Commissioner to argue that the error was harmless. The Court cannot conclude that the Commissioner's defense of the ALJ's basic and fundamental error was substantially justified.

### 3.    Conclusion

As the Court finds that the Commissioner's litigation position was not substantially justified, and because none of the other prerequisites for an award of EAJA fees is disputed, Plaintiff is entitled to an award of reasonable attorneys' fees. Therefore, the Court next considers whether Plaintiff may recover attorneys' fees related to work performed by Mr. Wilborn, as well as the reasonableness of the hours expended by Plaintiff's counsel.

1    **B.      Plaintiff is Entitled to Fees for Work Performed by Mr. Wilborn**

2          **1.      Supplemental Briefing**

3          On November 15, 2010, Plaintiff filed an application requesting attorneys' fees in the amount

4    of $7,719.32 pursuant to EAJA, 28 U.S.C. § 2412(d).  (Doc. 23.)  The original application sought

5    EAJA fees for 29 hours of work performed by Ralph Wilborn, Esq., an Oregon practitioner.  (*See*

6    Doc. 23-3, p. 2.)  Mr. Wilborn was employed by Plaintiff's attorney of record in this matter,

7    Sengthiene Bosavanh, Esq., to perform legal work related to this appeal.

8          The Court, *sua sponte*, requested additional briefing as to whether Plaintiff was entitled to

9    EAJA fees for work performed by an attorney who is not a member of the Bar of the State of

10   California or this Court; Mr. Wilborn had also not applied to appear *pro hac vice*.  In the order

11   regarding supplemental briefing, it was noted that the United States Court of Appeals for the Ninth

12   Circuit had addressed a similar question in *Winterrowd v. American General Annuity Insurance Co.*,

13   556 F.3d 815 (9th Cir. 2009).

14         In *Winterrowd*, the Ninth Circuit held that an Oregon attorney who was neither admitted to

15   the California State Bar nor admitted to practice *pro hoc vice* in the Central District of California,

16   may recover attorneys' fees for work in an action proceeding before the Central District of California.

17   The attorney did not physically appear before the Central District, did not sign pleadings, had

18   minimal contact with clients and no contact with opposing counsel, and was supervised by an

19   attorney who was admitted to the California State Bar and who remained solely responsible to the

20   clients.  *Winterrowd*, 556 F.3d at 825.  The recovery of fees was premised on a finding that the non-

21   admitted attorney "would have certainly been permitted to appear *pro hac vice*" had he applied.  *Id.*

22   at 822.  Here, both parties filed supplemental briefs addressing the application of *Winterrowd*.

23   (Docs. 27, 28.)

24         **2.      Fees for Work of Non-Admitted Practitioner Awardable Under EAJA**

25         Pursuant to this Court's Local Rule ("L.R.") 180(b), "[e]xcept as otherwise provided herein,

26   only members of the Bar of this Court shall practice in this Court."  Admission to the Bar of this

27   Court is limited to attorneys and is predicated on active and good standing membership with the

28

State Bar of California. L.R. 180(b). Attorneys who are not members of the Court's Bar may appear *pro hac vice*, pursuant to the following Local Rule:

> (2) Attorneys *Pro Hac Vice*. An attorney who is a member in good standing of, and eligible to practice before, the Bar of any United States Court or of the highest Court of any State, or of any Territory or Insular Possession of the United States, and who has been retained to appear in this Court may, upon application and in the discretion of the Court, be permitted to appear and participate in a particular case. Unless authorized by the Constitution of the United States or an Act of Congress, an attorney is not eligible to practice pursuant to (b)(2) if any one or more of the following apply: (i) the attorney resides in California, (ii) the attorney is regularly employed in California, or (iii) the attorney is regularly engaged in professional activities in California.

Mr. Wilborn is not a member of the California Bar or the Bar of this Court. Further, Mr. Wilborn has not applied to appear *pro hac vice*. The decision in *Winterrowd* presented an issue because in *Winterrowd* the Ninth Circuit predicated its award of fees in large part on the fact that the non-admitted attorney whose fees were being requested "would have certainly been permitted to appear *pro hoc vice*" had he applied. *Id.* at 822. As Mr. Wilborn has provided legal services in a large number of Ms. Bosavanh's cases before this Court, he is seemingly ineligible to appear *pro hac vice*.

Since the Court's order requiring additional briefing, the United States Court of Appeals for the Fourth Circuit has considered an analogous set of circumstances and specifically addressed whether an award of attorneys' fees was appropriate under EAJA where the attorney was not admitted to the district where the appeal was taken. *Priestley v. Astrue*, 651 F.3d 410, 415-19 (4th Cir. 2011). In *Priestley*, the plaintiffs in three Social Security appeals before the District of South Carolina sought EAJA fees for work performed by attorney Paul T. McChesney, who was admitted to the district court, as well as for the work of two out-of-state attorneys, Charles L. Martin and Perrie H. Naides, who "assisted McChesney in drafting briefs and pleadings for McChesney's review and filing." *Id.* at 413. Martin and Naides were not admitted to practice in South Carolina or before the District of South Carolina. *Id.* Rather, attorneys Martin and Naides were licensed to practice in Georgia and Pennsylvania, respectively, and they each practiced their specialty of briefing Social Security appeals through their law firm in Georgia. *Id.* Their participation in the litigation before

1   the District of South Carolina, however, was limited to submitting drafts of documents to

2   McChesney, who reviewed, edited, signed, and filed the documents with the Court.  *Id.*

3       The district court granted the motions for the fees charged by McChesney, but it denied the

4   motion for fees charged by Martin and Naides because they were not licensed to practice law in the

5   District of South Carolina and were not admitted *pro hac vice*.  The court noted that the local rule

6   for the District of South Carolina authorized *pro hac vice* admission of out-of-state attorneys "for

7   occasional appearances," but not as a "substitute for regular admission to the Bar of this Court."  *Id.*

8   at 421.  The district court noted that Martin and Naides had provided McChesney "with similar

9   assistance in dozens of earlier cases."  *Id.* at 413.  Their work constituted between 75 to 85 percent

10  of the fees for which McChesney's clients sought reimbursement under EAJA.  *Id.*  The district court

11  determined that Martin and Naides' lack of licensure was a "special circumstance" that made

12  reimbursement of their fees "unjust" under EAJA.  *See* 28 U.S.C. § 2412(d)(1)(A) ("a court shall

13  award to a prevailing party other than the United States fees and other expenses . . . unless the court

14  finds that . . . special circumstances make an award unjust").  *Id.*

15      On appeal, the plaintiffs asserted that McChesney's retention of out-of-state attorneys for

16  assistance in brief writing did not preclude reimbursement of their fees under EAJA, and it did not

17  violate the District of South Carolina's local rules.  *Id.*  Accordingly, they argued that there were no

18  "special circumstances" that justified the denial of attorneys' fees for work performed by the out-of-

19  state attorneys.  *Id.*  The Fourth Circuit held that "the use of nonadmitted lawyers for brief writing

20  services does not present a 'special circumstance' sufficient to deny a fee award as 'unjust' under the

21  EAJA."  *Id.*  In so holding, the court reasoned that EAJA provides a broad definition of "fees and

22  other expenses" indicating that Congress intended to award a wide range of fees and expenses to the

23  prevailing party in litigation with the government.  *Id.* at 416.  The EAJA, therefore, authorized

24  reimbursement of fees for "persons conducting studies, doing analyses, or issuing reports, as well

25  as for attorneys['] fees."  *Id.*  The court noted that it had previously held that reimbursement of

26  attorneys' fees includes authorization for reimbursement for work performed not only by attorneys

27  but also by persons doing "'tasks traditionally performed by an attorney and for which the attorney

28  would customarily charge the client,' regardless of whether an attorney, or a paralegal, or a law clerk

1      actually performed them." *Id.* (quoting *Hyatt v. Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002)).  Thus,

2 the court concluded, with "little difficulty," that EAJA authorizes a plaintiff to receive

3 reimbursement for work performed by an attorney, regardless of whether that attorney is admitted

4 to practice in that particular district.  *Id.*

5      The court further held that, to the extent the district court concluded that reimbursement was

6 inappropriate for the work performed by Martin and Naides due to their failure to be admitted under

7 the local rules of the court or under the local rules' *pro hac vice* provisions, that determination

8 "improperly linked the requirements for the practice of law in the district court with the requirements

9 of EAJA, thus limited the scope of fees that EAJA otherwise authorizes." *Id.* at 416.  As a result,

10 the district court "ended up effectively sanctioning out-of-state attorneys for purported violations of

11 its local rules by denying reimbursement for their fees under the EAJA." *Id.*  The court noted that

12 Martin and Naides' violation of the local rules, if any, would be "quite thin" because these attorneys

13 "never physically appeared in court or before the judge; they never filed a brief or paper in the court;

14 they never communicated with opposing counsel; they never even communicated with the plaintiffs."

15 *Id.* at 417.  Thus, the record suggested that Martin and Naides did not "appear" before the district

16 court.  *Id.*  The Fourth Circuit concluded that the issues of attorney compliance with the local rules

17 of the court and reimbursement under the EAJA are separate matters and "should not be so mixed."

18 *Id.* at 416.

19      In *Roberts v. Astrue*, No. 1:09-cv-01581-DLB, 2011 WL 2746715 (E.D. Cal. July 13, 2011),

20 the court specifically considered the application of *Priestley* on a request for EAJA fees for Mr.

21 Wilborn's work in another case before this district.  In *Roberts*, the court concluded that the fees for

22 Mr. Wilborn's work were compensable under EAJA and provided the following discussion:

23          The facts of Mr. Wilborn's involvement in this and related actions are almost
identical [to *Priestley*].  He has provided drafts of briefing to Ms. Bosavanh, who is

24 admitted to practice before this Court, for review, signing, and filing.  He does not
discuss the case with the client or opposing counsel, does not indicate that he is

25 counsel for Plaintiff on the pleadings and has never physically appeared in this Court.
Based on the reasoning of <u>Priestley</u>, therefore, the Court finds that Mr. Wilborn's

26 involvement is not a "special circumstance" under EAJA that would make an award
unjust.

27

28          The Court's conclusion, however, is limited to the circumstances of requests
for EAJA in Social Security appeals.  Such a finding is logical because Social

1   Security practice in District Courts within the Ninth Circuit, to which Mr. Wilborn
    is admitted, is controlled by the same Ninth Circuit law.  The Court's finding also
2   taken into consideration the lack of objection from the Commissioner.

3          In relying on the interpretation of EAJA to award Mr. Wilborn fees, the
    Court's finding is not based on <u>Winterrowd v. Am. Gen. Annuity Ins. Co.</u>, 556 F.3d
4   815 (9th Cir. 2009), where the decision to award fees was not made in the context of
    EAJA.  In other words, the Court makes no determination as to whether Mr. Wilborn
5   "appeared" or "practiced" in violation of the Local Rules.  Moreover, in light of the
    fact that the Court raised this issue and based on Mr. Wilborn's statement that he is
6   no longer accepting work for new cases in this Court, there is no need to address the
    issue of whether sanctions could, or should, issue.

7

8          Similarly, this Court finds the reasoning of *Priestley* to be persuasive and conclusive on the

9   issue.  As set forth in *Priestley*, the work performed by Mr. Wilborn is compensable under EAJA,

10  even though he is not admitted to this district, in the same way fees for work performed by a law

11  student or a paralegal, neither of whom would be admitted to any district court, is compensable under

12  EAJA.  *See Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 581 (2008) ("attorney[s'] fees" under

13  EAJA includes "fees for paralegal services").  As the court noted in *Roberts*, Mr. Wilborn's

14  involvement in this action and other related actions in this district is nearly identical to that of

15  Martin's and Naides' in *Priestly*.  Mr. Wilborn provided drafts to Plaintiff's attorney of record, Ms.

16  Bosavanh, who is admitted to practice in California and before this Court.  He did not discuss the

17  cases with clients or opposing counsel.  Nothing in the docket indicates that he is counsel for

18  Plaintiff, and Mr. Wilborn has never made an appearance before the Court.  Thus, as the courts

19  reasoned in *Priestly* and *Roberts*, despite the absence of a license to practice law in California or

20  admittance to the Bar of this Court, Mr. Wilborn's work in furtherance of Plaintiff's appeal is not a

21  "special circumstance" under EAJA that would make an award of fees unjust.  *See Priestley*,

22  651 F.3d at 419; *see also Roberts*,  2011 WL 2746715, at * 4.  Finally, because *Winterrowd* did not

23  involve a fee award in the context of EAJA, it is distinguishable, and in any event, does not change

24  the outcome, particularly in light of *Priestley*.

25         Like *Roberts*, the Court declines to make a determination as to whether Mr. Wilborn

26  "appeared" or "practiced" in violation of the Local Rules.  First, extending the rationale of *Priestley*

27  to this case, the work performed by Mr. Wilborn was of a limited nature suggesting that it did not

28  rise to the level of an "appearance." *Priestley*, 651 F.3d at 417 (supporting role of Martin and Naides

"strongly suggests" that they did not "appear" before the district court, and any purported violations of the local rules "would be quite thin and at most, of a technical nature"). Second, even to the extent it was an "appearance," the Court finds that sanctions are not appropriate.

## C.    The Reasonableness of Fees and Expenses

As the Court has determined that Plaintiff is entitled to recover attorney's fees for work performed by Mr. Wilborn, the Court must next determine what constitutes a reasonable award of attorneys' fees. *See* 28 U.S.C. § 2412(d)(2)(A); *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1992) (district court has an independent duty to review plaintiff's fee request to determine its reasonableness). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Blum v. Stenson*, 465 U.S. 886, 897 (1984). "The [Court] must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983). "'Hours that are not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority.'" *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)). The applicant bears the burden of demonstrating the reasonableness of the fee request. *Blum*, 465 U.S. at 897.

### 1.    Hourly Rates

Plaintiff requests $172.24 per hour for work performed by his counsel in 2009, $175.06 per hour for work performed by his counsel in 2010, and $179.51 per hour for work performed in 2011, which are the applicable statutory maximum hourly rates under EAJA, adjusted for increases in the cost of living, as published by the Ninth Circuit on its website pursuant to 28 U.S.C. § 2412(d)(2)(A), *Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005), and Ninth Circuit Rule 39-1.6. The Commissioner does not oppose these hourly rates. Further, these rates have been considered reasonable in other social security cases in this district, *see, e.g., Roberts*, 2011 WL 2746715, at * 4, and the Court does not find any basis to reduce the hourly rates requested here.

1      **2.     Hours Expended**

2          As to hours expended, in his original EAJA application, Plaintiff seeks attorneys' fees for

3   15.4 hours of work performed by Ms. Bosavanh and 29 hours of work performed by Mr. Wilborn.

4   (Doc. 23-1, p. 6.)  In his November 28, 2011, supplemental request, Plaintiff seeks an additional

5   award of attorneys' fees for the 15.25 hours expended by Mr. Wilborn in drafting a reply brief to the

6   Commissioner's opposition to Plaintiff's original EAJA application.  (Doc. 30.)  The Commissioner

7   opposes the supplemental EAJA application asserting that the total number of hours requested is

8   unreasonable.  (Doc. 32.)

9          **a.     Ms. Bosavanh's Time Entries**

10         **(i)     Time Expended Reviewing Documents and Court Filings**

11         The Commissioner argues that certain time spent by Ms. Bosavanh in filing a complaint,

12  preparing the service of process document, and receiving a return of service and other documents

13  was clerical work that is not compensable under the EAJA.  While the Court does not find that Ms.

14  Bosavanh's time expended drafting a complaint or reviewing a summons or other service documents

15  is per se non-compensable under the EAJA, some of Ms. Bosavanh's time entries are nonetheless

16  unreasonable in the aggregate.  *See Aguilera v. Astrue*, No. 08-cv-67 WQH (JMA), 2009 WL

17  1156510, at *3 (S.D. Cal. Apr. 28, 2009) ("Review of service documents and other documents filed

18  in this Court is not clerical work that could have been performed by a non-attorney.").

19         The amount of time spent by Ms. Bosavanh reviewing documents is unreasonable when

20  considered as a whole.  Six-minute billing increments, which is how Ms. Bosavanh's time entries

21  are recorded and presented, can be problematic when small tasks that require less than six minutes

22  are recorded separately.   Six-minute billing increments can result in a rounding-up that over-

23  calculates the time actually spent on the tasks in total.  Thus, for example, when eight separate tasks

24  that require one minute each (for a total of eight minutes of time) and are billed as eight discrete six-

25  minute tasks, they are billed as 48 minutes of time spent.  In other words, eight minutes of actual

26  time spent generates billing entries of 48 minutes.  Repeated 0.1 entries (six minutes) for tasks that

27  require less than six minutes each will ultimately reflect more time than that actually expended.  Ms.

28

Bosavanh provides the following time entries pertaining to the review or completion of routine documents and orders:

| Date | Description | Time |
|------|-------------|------|
| 05/06/09 | Receive and review application to proceed IFP submitted by court | 0.1 |
| 05/07/09 | Receive and review court orders and related documents | 0.1 |
| 05/08/09 | Consent to magistrate judge and electronically file | 0.1 |
| 05/15/09 | Receive and review return receipt from U.S. Attorney | 0.1 |
| 05/18/09 | Receive and review return receipt from Commissioner of [SSA] | 0.1 |
| 06/04/09 | Receive and review return receipt from Attorney General | 0.1 |
| 10/14/09 | Receive and review consent to magistrate judge filed by OGC | 0.1 |
| 10/19/09 | Receive and review docket information re: OGC's extension request | 0.1 |
| 10/22/09 | Receive and review court order granting defendant's request for extension | 0.1 |
| 10/29/09 | Receive and review notice of transcript lodging | 0.1 |
| 04/07/10 | Receive and review court order of reassignment | 0.1 |

**Total:**      **1.1 hours**

While the Court appreciates the need for counsel to review court orders, the docket, and prepare routine documents for filing, the total amount billed for the tasks above is unreasonable when each event is recorded as a discrete six-minute event. Multiple 0.1 time entries for review of single-page documents in the record, such as notices and minute orders, resulted in an unreasonable accumulation of time.

1   Review of the documents listed above by a practitioner thoroughly familiar with social

2   security appeals in this district, as counsel is here, should require no more than two to three minutes

3   per task, particularly because the electronic docket system provides counsel with email notices of

4   docket activity and a link to any document filed; thus, an attorney does not even have to log into

5   CM/ECF to view the docket entry.  While these activities do take time, billing judgment must be

6   exercised in reviewing the accumulation of 0.1 billing entries and comparing such entries to the time

7   actually expended performing these tasks.  Based on the activities recorded in reviewing or preparing

8   routine, simple documents, the Court finds that only 0.4 of the time expended on these activities is

9   reasonable; thus, a reduction of 0.7 hours is warranted.  As most of the time entries were billed at

10   the 2009 billing rate, the reduction of hours will be calculated at the 2009 billing rate.

11   Additionally, Plaintiff's counsel expended 1.5 hours drafting, reviewing, and submitting the

12   complaint and "related documents."  (Doc. 23-2, p. 2.)  In the context of a social security appeal,

13   these documents are extremely routine.  The complaint in this case is three pages in length and,

14   unlike the opening brief, does not require a plaintiff to set out arguments or facts in any particular

15   detail.  Only one proposed order was filed in relation to the complaint, but this was a downloaded

16   form and not a document that counsel prepared.  (*See* Doc. 4.)  Upon review of the documents

17   completed for filing and service on May 5, 2009, only 1.0 hour of time spent is reasonable; thus a

18   0.5 hour reduction is warranted.

19                                **(ii)    Insufficiently Documented Billing Entry**

20   With respect to Ms. Bosavanh's billing entry on May 8, 2009, which indicates that 1.0 hour

21   of time was spent to "[p]repare documents and serve three government defendants," this request

22   lacks any specificity. (Doc. 23-2, p. 2.)  The Court presumes that the documents prepared and served

23   included Plaintiff's complaint and civil cover sheet, which were already prepared on May 5, 2009,

24   and the time for drafting those documents was already billed.  (*See* Doc. 23-2, p.2.)  Thus,

25   "preparation" of these documents on May 8, 2009, would consist of printing them out, as opposed

26   to drafting them.  As the work documented in this time entry lacks specificity and appears entirely

27   duplicative of the time spent preparing documents on May 5, 2009, this time will not be awarded.

28   *See Hensley*, 416 U.S. at 433 (it is the fee applicant's burden to submit "evidence supporting the

1  hours worked").  Accordingly, a 1.0-hour reduction of time is warranted for the time expended on

2  May 8, 2009, to "[p]repare documents and serve three government defendants."

### (iii) Time Spent on the EAJA Application

4  The Commissioner objects to the time Ms. Bosavanh spent preparing documentation in

5  support of Plaintiff's EAJA application. (Doc. 24, 7:5-7.)  The objection is generally predicated on

6  the basis that Ms. Bosavanh's work preparing time documents in support of Plaintiff's EAJA

7  application "amounts to generating the billing sheet" and is "excessive on its face and potentially

8  clerical." (Doc. 24, 7:5-7.)

9  For purposes of preparing a declaration to support an EAJA application, an attorney is

10  generally required to calculate the time spent on the subject litigation (as opposed to time related to

11  administrative proceedings prior to the civil action) and review the descriptions of time entries to

12  be certain they do not contain privileged or confidential information.  As Ms. Bosavanh's time entry

13  related to reviewing her billing records is contained in a block of 1.4 hours on October 8, 2010, for

14  two different tasks ("Review docket and case notes; prepare time documents"), it is not clear how

15  much time was spent reviewing time entries as opposed to drafting her declaration supporting the

16  EAJA application; thus a reduction of this time is warranted. *See Hensley*, 416 U.S. at 433 (it is the

17  fee-applicant's burden to submit "evidence supporting the hours worked").

18  Moreover, because clients are not properly charged for their attorney's time spent creating

19  a billing statement, time spent creating time entries or reviewing them for clerical accuracy is not

20  properly compensable. *See Hensley* 461 U.S. at 43 ("'In the private sector, "billing judgment" is an

21  important component in fee setting.  It is not less important here.  Hours that are not properly billed

22  to one's client also are not properly billed to one's *adversary* pursuant to statutory authority.'"

23  (quoting *Copeland*, 641 F.2d at 891)).  However, the time spent preparing a declaration in support

24  of an EAJA application and reviewing time entries to ensure they contain no confidential information

25  is appropriate and compensable.  Because the billing entry does not establish how much time was

26  expended on each of these discrete tasks, it is difficult to determine whether any of the time

27  expended is reasonable.  The Court finds that 0.5 hour is a reasonable amount of time to review

28  descriptions in billing entries, select relevant entries for inclusion in the EAJA application, and

complete a declaration.   Thus, Ms. Bosavanh's time expended in reviewing her time-entry descriptions and drafting her declaration warrants a reduction of 0.9 hours.

### (iv)   Conclusion

For the reasons stated above, Ms. Bosavanh's time shall be reduced by 3.1 (0.7 + 0.5 + 1.0 + 0.9) hours for unnecessary, duplicative, or otherwise unreasonable time expended.  Compensation for Ms. Bosavanh's time shall be awarded as follows:

| **Ms. Bosavahn** | **2009** | **2010** | **Totals** |
|---|---|---|---|
| **Hours:** | 7<br><br>(9.2 - 2.2 (0.7 + 0.5 + 1.0)) | 5.3<br><br>(6.2 - 0.9) | 12.3 |
| **Rate:** | $172.24 | $174.64 | |
| **Total Award:** | $1,205.68 ($172.24 x 7) | $925.59 ($174.64 x 5.3) | $2,131.27 |

### b.   Time Expended by Mr. Wilborn, Esq.

#### (i)   Time Spent on the Confidential, Opening, and Reply Briefs

On November 28, 2009, Mr. Wilborn spent 5.25 hours reviewing the ALJ's decision, analyzing the record, and researching and drafting Plaintiff's opening brief.  (Doc. 23-3, p. 2.)   On January 25, 2010, Mr. Wilborn again spent 8.5 hours reviewing the ALJ's decision, reviewing the administrative record, and researching and drafting an opening brief.  (Doc. 23-3, p. 2.)  Finally on March 11 and 12, 2010, Mr. Wilborn spent 12.50 hours reviewing the ALJ's decision, reviewing the administrative record, reviewing the briefs, and researching and drafting a reply brief.  (Doc. 23-3, p. 2.)   The Commissioner asserts that the time expended on these tasks was unreasonable. Specifically, the Commissioner argues that the administrative record was only 242 pages long and the issue for which remand was sought was routine.  Moreover, the Commissioner contends that, because of the overlap of issues between the confidential brief and the opening brief, the 8.5 hours spent on the opening brief was unnecessary and unreasonable. (Doc. 24, 5:23-6:10.)

Mr. Wilborn presents his time entries in block-billing format.  Block billing refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case rather than itemizing the time expended on specific tasks." *Harolds Stores, Inc.*

1  *v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996).  "Block billing, which

2  bundles tasks in a block of time, makes it extremely difficult for a court to evaluate the

3  reasonableness of the number of hours expended." *Aranda v. Astrue*, No. CV 08-340-MA, 2011 WL

4  2413996, at *5 (D. Or. June 8, 2011).   However, while "the fee applicant bears the burden of

5  submitting 'evidence supporting the hours worked and the rates claimed,'" counsel is "'not required

6  to record in great detail how each minute of his time was expended.'" *Fischer v. SJB-P.D. Inc.*,

7  214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *Hensley,* 461 U.S. at 437 n.12.).  Thus, in *Fischer*, the

8  Ninth Circuit explained that, rather than refusing to award any fees where documentation is

9  insufficient because of block-billing, the court should either request more information or "simply

10  reduce[] the fee to a reasonable amount." *Id.*  (citing *Hensley*, 461 U.S. at 433 for the proposition

11  that a district court can "reduce" the fee award where the documentation is inadequate).

12        Here, while Mr. Wilborn's time spent on the briefing is compensable, the large block-billing

13  entries do not delineate how much time was expended on the tasks recorded in each entry.  For

14  example, Mr. Wilborn spent 8.5 hours on January 25, 2010, on several tasks including re-reading

15  the ALJ's decision and re-reading and re-analyzing the administrative record. (Doc. 23-3, p. 2.)  On

16  March 11, 2010, Mr. Wilborn spent 9.0 hours on tasks that again included re-reading and re-

17  analyzing the ALJ's decision and the administrative record.  (Doc. 23-3, p. 2.)

18        While the Court appreciates the need for Mr. Wilborn to reacquaint himself with the facts

19  and the record, there are three separate entries that relate to reviewing and re-reading the ALJ's

20  decision and the administrative record.  Without any indication of how much time was spent on

21  discrete tasks described in the block-billed entries, some of this time appears duplicative and

22  redundant.  Additionally, there is necessary overlap between the confidential brief and the opening

23  brief and some of the time expended on the opening brief must be discounted for this reason.

24  Therefore, the Court will reduce the 8.5 hours expended on the opening brief by 3.5 hours.  *See*

25  *Fischer*, 214 F.3d at 1121.  Further, of the 12.5 hours expended on the reply brief, the Court will also

26  reduce that time by 3.5 hours.  The  reply brief was 15 pages long and addressed only a single, fairly

27  routine issue.

28

1            (ii)     **Time Spent on the Initial EAJA Application**

2          The Commissioner asserts that the 2.5 hours Mr. Wilborn expended in preparing the EAJA

3    application, including his declaration, was excessive.   As discussed above, because Mr. Wilborn's

4    time records are submitted in block-billed format, it is impossible to determine how much time was

5    spent on particular discrete tasks recorded in each billing entry.  In light of the tasks completed, only

6    1.5 hours was reasonable to prepare an EAJA settlement letter, review the file, review the time

7    expended, and prepare the EAJA application. *See Chanthavong v. Astrue*, No. 1:09-cv-1561-SKO,

8    2011 WL 6751930 (E.D. Cal. Dec. 23, 2011) (finding 1.5 hours reasonable for counsel to review the

9    file, review the time expended, and prepare the EAJA application).  Thus, a 1.0-hour reduction is

10   warranted.

11          c.     **Plaintiff's Supplemental EAJA Application**

12          When calculating an appropriate supplemental fee award, courts are to be guided by the

13   framework set out in *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  *See Comm'r, I.N.S. v. Jean*,

14   496 U.S. 154, 161-63 (1990).  In setting the fee, "the most critical factor is the degree of success

15   obtained." *Hensley*, 461 U.S. at 436.  As *Hensley* requires a court to calibrate the amount of attorney

16   fees to the degree of success a claimant has achieved, it is generally appropriate to approve an award

17   of supplemental fees that is commensurate with the degree of success obtained on the original

18   application.  *See Wagner v. Shinseki*, 640 F.3d 1255, 1260 (Fed. Cir. 2011); *Schwarz v. Sec'y of

19   Health & Human Servs.*, 73 F.3d 895, 909 (9th Cir. 1995) (affirming award of 50 percent of the

20   supplemental fees sought by a claimant where she obtained approximately 50 percent of the fees

21   claimed in her initial application); *Thompson v. Gomez*, 45 F.3d 1365, 1367-69 (9th Cir. 1995)

22   (concluding that a district court properly awarded 87 percent of the supplemental fees requested

23   where claimants received 87 percent of the fees sought in their original fee application); *Harris v.

24   McCarthy*, 790 F.2d 753, 758-59 (9th Cir. 1986) (affirming district court's decision to award

25   claimants 11.5 percent of their supplemental fee request since they had obtained only 11.5 percent

26   of the fees requested in their original fee application).

27          District courts, however, have broad discretion in awarding attorneys' fees, *see Hensley*,

28   461 U.S. at 437, and are not bound, in every case, to make an award of supplemental fees that is

proportionate to the degree of success obtained in the original application.  Pursuant to 28 U.S.C. § 2412(d)(2)(A), a litigant is only entitled to "reasonable" attorneys' fees, and in determining the appropriate amount of supplemental fee award, a court may properly discount "[e]xorbitant, unfounded, or procedurally defective fee applications – like any other improper position that may unreasonably protract proceedings . . . . " *Jean*, 496 U.S. at 163.

In his supplemental application, Plaintiff seeks 15.25 hours for time spent by Mr. Wilborn drafting a reply brief in response to the Commissioner's opposition to Plaintiff's original EAJA application and setting forth his time expenditures by declaration in support of the supplemental EAJA application.  The Commissioner opposes the supplemental application, asserting that the amount of time expended on the brief in reply to the Commissioner's opposition to Plaintiff's EAJA application was unreasonable.

As discussed above, the court has determined that 33.3 hours of time expended by Plaintiff's counsel is reasonable, which amounts to 75 percent  (33.3/44.4) of the total time requested by Plaintiff for compensation of the time his attorneys spent litigating the merits.  A proportionate share for the fees-for-fees litigation, which is at issue in the supplemental EAJA application, amounts to approximately 11.4 hours of time (.75 x 15.25).  The Court finds this arithmetic reduction is appropriate for fees-on-fees attorney time.  *See Schwarz*, 73 F.3d at 909; *Thompson v. Gomez*, 45 F.3d at 1367-69; *Harris*, 790 F.2d at 758-59.

### d.    Conclusion

As it relates to Plaintiff's initial EAJA application, compensation for the time expended by Mr. Wilborn is as follows:

| **Mr. Wilborn** | **2009** | **2010** | **Totals** |
|---|---|---|---|
| **Hours:** | 5.25 | 15.75<br><br>(23.75- 7 (3.5 + 3.5 - 1.0)) | 21.0 |
| **Rate:** | $172.24 | $174.64 | |
| **Total Award:** | $904.26 ($172.24 x 5.25) | $2,750.58 ($174.64 x 15.75) | $3,654.84 |

1   As it pertains to Plaintiff's supplemental EAJA application, as discussed above, 11.4 hours

2   of Mr. Wilborn's time was reasonably expended defending the initial EAJA application in a reply

3   brief.  As nearly all of this work was performed in 2010, the 2010 billing rate shall apply.  Thus,

4   Plaintiff shall be awarded an additional $1,990.90 ($174.64 x 11.4) for work performed by his

5   counsel in filing a reply brief responding to the Commissioner's opposition to the initial EAJA

6   application, which is directly proportional to the amount of hours awarded for counsel's work on the

7   merits of the case.  Reasonable compensation for Mr. Wilborn's time amounts to $5,645.75

8   ($3,654.85 + $1,990.90).

9   ### III.   CONCLUSION

10   Accordingly, IT IS HEREBY ORDERED that:

11   1.   Plaintiff's original and supplemental applications for awards of EAJA fees are

12        GRANTED as follows:

13        a.   Plaintiff is awarded $2,131.27 for work performed by Ms. Bosavanh;

14        b.   Plaintiff is awarded $5,645.75 for worked performed by Mr. Wilborn; and

15   2.   The attorneys' fees awarded shall be made payable to Plaintiff pursuant to *Astrue v.*

16        *Ratliff*, 130 S. Ct. 2521 (2010).

17

18   IT IS SO ORDERED.

19   **Dated:    April 11, 2012**                      _____/s/ Sheila K. Oberto_____
                                                       UNITED STATES MAGISTRATE JUDGE
20

21

22

23

24

25

26

27

28